IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| COMMODITY FUTURES TRADING COMMISSION, | § § § | |
| Plaintiff, | § § | |
| v. | § § | No. 3:06-CV-1583-M |
| CARL W. KING and CARL W. KING INVESTMENTS, LLP, | § § § § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff's Motion for Summary Judgment, wherein the Commodity Futures Trading Commission ("Commission") seeks various kinds of relief from Defendants Carl W. King and Carl W. King Investments, LLP. Defendants do not oppose most of the relief requested. For the reasons stated below, the Court **GRANTS IN PART** and **DENIES IN PART** the Commission's Motion.

### BACKGROUND

There is no dispute over the facts of this case. Since at least 1995 and continuing through February 2003, Defendants engaged in a scheme to defraud customers in connection with solicitations to buy and sell commodity futures contracts. Carl W. King, individually and in his capacity as an officer of Carl W. King Investments, LLP ("King Investments"), purported to engage in the business of investment management, primarily buying and selling commodity futures contracts. He solicited approximately nine million dollars from customers, fraudulently advising them that commodity futures trading was taking place on their behalf and that they had

earned approximately twenty percent annual interest on their investments.  He issued account statements to customers that reflected purported account balances and fictional interest earnings, when, in fact, the investments did not yield any annual profits for customers.  Rather, King withdrew customers' funds from King Investments and misappropriated them for his personal expenses and the operating expenses of King Investments.  The fraudulent scheme and misrepresentations resulted in losses to more than sixty customers, in the total amount of $4,499,146.51.

King was criminally charged for this conduct and pled guilty to one count of mail fraud.  He admitted to participating, individually and on behalf of King Investments, in the fraudulent scheme.  He was sentenced to eighty-seven months in prison and ordered to pay restitution in the amount of $4,499,146.51.  King was additionally enjoined from engaging in activity related to securities trading for the duration of his incarceration and supervised release.  He was not expressly enjoined from engaging in activity related to commodity trading.

## STANDARD OF REVIEW

Summary judgment is warranted when the facts as reflected in the pleadings, affidavits, and other summary judgment evidence show that no reasonable trier of fact could find for the nonmoving party as to any material fact.  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986).  "The moving party bears the initial burden of identifying those portions of the pleadings and discovery in the record that it believes demonstrate the absence of a genuine issue of material fact, but is not required to negate elements of the nonmoving party's case."  *Lynch Props., Inc. v. Potomac Ins.*, 140 F.3d 622, 625 (5th Cir. 1998) (citing *Celotex*, 477

U.S. at 322–25). In a case such as this one, in which the movant bears the burden of proof, the movant "must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original). Once the movant carries its initial burden, the burden shifts to the nonmovant to show that summary judgment is inappropriate. *Fields v. City of S. Houston*, 922 F.2d 1183, 1187 (5th Cir. 1991). In the case at bar, Defendants do not attempt to demonstrate that summary judgment is inappropriate. Rather, Defendants simply dispute what law governs a particular form of relief sought by the Commission.

## ANALYSIS

The Commission filed suit against Defendants for Defendants' violations of section 4b(a)(2)(i)–(iii) of the Commodity Exchange Act, 7 U.S.C. §§ 1–27(f) ("CEA"). 7 U.S.C. § 6b(a)(2)(i)–(iii).[1] In short, section 4b(a)(2)(i)–(iii) of the CEA prohibits fraudulent activities in connection with commodity futures trading. 7 U.S.C. § 6b(a)(2)(i)–(iii). Defendants do not contest that their actions violated the CEA. The Court must determine if the Commission's proof satisfies the burden the Commission bears in seeking summary judgment on its own claims.

---

[1] In full, 7 U.S.C. § 6b(a)(2)(i)–(iii) provides:
> It shall be unlawful . . . for any person, in or in connection with any order to make, or the making of, any contract of sale of any commodity for future delivery made, or to be made, for or on behalf of any other person if such contract for future delivery is or may be used for (A) hedging any transaction in interstate commerce in such commodity or the products or byproducts thereof, or (B) determining the price basis of any transaction in interstate commerce in such commodity, or (C) delivering any such commodity sold, shipped, or received in interstate commerce for the fulfillment thereof—
>> (i) to cheat or defraud or attempt to cheat or defraud such other person;
>> (ii) willfully to make or cause to be made to such other person any false report or statement thereof, or willfully to enter or cause to be entered for such person any false record thereof;
>> (iii) willfully to deceive or attempt to deceive such other person by any means whatsoever in regard to any such order or contract or the disposition or execution of any such order or contract, or in regard to any act of agency performed with respect to such order or contract for such person.

*Fontenot*, 780 F.2d at 1194.

### A. Section 4b(a)(2)(i)–(iii) of the Commodity Exchange Act

The elements of a fraud action under section 4b of the CEA are "derived from the common law action for fraud." *Puckett v. Rufenacht, Bromagen & Hertz, Inc.*, 903 F.2d 1014, 1018 (5th Cir. 1990). Thus, the Commission bears the burden of proving three elements to establish its claims of fraud under section 4b(a)(2)(i)–(iii) of the CEA: (1) the making of a misrepresentation, misleading statement, or deceptive omission; (2) scienter; and (3) materiality. *CFTC v. R.J. Fitzgerald & Co.*, 310 F.3d 1321, 1328 (11th Cir. 2002); *CFTC v. AVCO Fin. Corp.*, 28 F. Supp. 2d 104, 115 (S.D.N.Y. 1998). "Whether a misrepresentation has been made depends on the 'overall message' and the 'common understanding of the information conveyed.'" *R.J. Fitzgerald*, 310 F.3d at 1328. Scienter has been found when the defendant's conduct involves intentional omissions or misrepresentations that present a risk of misleading customers, either known to the defendant or sufficiently manifest that the defendant "must have been aware of" the risk. *Id.* A misrepresented or omitted fact is material "if a reasonable investor would consider it important in deciding whether to make an investment." *Id.* at 1328–29. Such misrepresentations made to customers when soliciting funds are actionable. *Saxe v. E.F. Hutton & Co.*, 789 F.2d 105, 110–11 (2d Cir. 1986).

Provisions (i) and (iii) of section 4b(a)(2) of the CEA prohibit cheating, defrauding, or deceiving other persons—or attempting to do the same—in connection with commodity futures trading. 7 U.S.C. § 6b(a)(2)(i), (iii). The Commission avers that the first and third elements of fraud are satisfied with respect to section 4b(a)(2)(i), (iii) because King has admitted, in the course of pleading guilty to the underlying criminal charge, that he misrepresented material

information to potential customers.  The Court agrees.  Specifically, King admitted that he represented to customers that he actually invested their funds in commodity futures contracts, when in fact he never did so; that he misrepresented the account balances of, and the value of the assets he purportedly managed for, customers; and that he misrepresented the annual interest earnings of customers' investments as twenty percent, when in fact his management of their funds generated no profit whatsoever.  The Commission submits that King's scienter is established because King admitted knowing of the falsity of his statements to customers and of the actual use of customer funds.  The Court agrees.  King's violation of section 4b(a)(2)(i), (iii) of the CEA is further proven by his admitted misappropriation of customer funds for personal and professional use.  *CFTC v. Morse*, 762 F.2d 60, 62 (8th Cir. 1985) (finding misappropriation to violate section 4b of the CEA; "It is enough that he acted deliberately, knowing that his acts were unauthorized and contrary to instructions.").

Provision (ii) of section 4b(a)(2) of the CEA prohibits the willful making of false reports or statements, or false records on behalf of a customer, in connection with commodity futures contracts.  7 U.S.C. § 6b(a)(2)(ii).  The Commission argues that King violated this section by knowingly creating and distributing false account statements to all customers.  The customer statements, which King admits to issuing fraudulently, contained false account information that misrepresented that commodity futures trading was actually taking place, that customer accounts actually contained funds, and that customer accounts earned profits and interest from purportedly traded commodity futures.  Similar conduct has been held to constitute misrepresentation of material facts, with scienter.  *CFTC v. Rosenberg*, 85 F. Supp. 2d 424, 447–48 (D.N.J. 2000).

Based on the foregoing, the Court **GRANTS** the Commission's Motion, finding beyond

peradventure that since at least 1995 and continuing through February 2003, King engaged in a scheme to defraud customers in connection with solicitations to buy and sell commodity futures contracts, all in violation of section 4b(a)(2)(i)–(iii) of the CEA.

The Commission further argues that King Investments is liable for King's violations of the CEA, as a principal of his acts as its agent. The Court agrees. The CEA provides that "[t]he act, omission, or failure of any official, agent, or other person acting for any individual, association, partnership, corporation, or trust within the scope of his employment or office shall be deemed the act, omission, or failure of such individual, association, partnership, corporation, or trust, as well as of such official, agent, or other person." 7 U.S.C. § 2(a)(1)(B). Essentially, principals are strictly liable under the CEA for their agents' acts, omissions, and failures within the scope of their employment. *Rosenthal & Co. v. CFTC*, 802 F.2d 963, 966 (7th Cir. 1986); *Dohmen-Ramirez v. CFTC*, 837 F.2d 847, 857–58 (9th Cir. 1988). There is no doubt that King was acting as an agent and officer of King Investments. By his own admission, he controlled King Investments, deposited and withdrew money into and from King Investments' corporate account, and solicited customer funds on behalf of King Investments. At all relevant times, King acted as an agent and officer of King Investments, and King Investments is therefore liable for King's violations of the CEA.

*B. Restitution*

In its first request for relief for Defendants' violations of the CEA, the Commission seeks restitution in the amount of $4,499,146.51, to be paid concurrently with the restitution ordered by the Eastern District of Texas in King's criminal case. The Court agrees with the Commission

that it has authority to award restitution in this matter.[2] *CFTC v. Muller*, 570 F.2d 1296, 1300 (5th Cir. 1978) ("It has long been recognized that in an action brought to enforce the requirements of remedial statutes such as this Act, a district court has broad discretion to fashion appropriate relief."); *CFTC v. Am. Metals Exch. Corp.*, 991 F.2d 71, 76 (3d Cir. 1993) ("A number of courts have held that district courts have the power to order disgorgement as a remedy for violations of the Act."); *CFTC v. Midland Rare Coin Exch., Inc.*, 71 F. Supp. 2d 1257, 1264 (S.D. Fla. 1999) (granting Commission's request for disgorgement and restitution). However, the Court is concerned about the propriety of entering a duplicative award of restitution as to King, notwithstanding the Commission's request that the award be "concurrent" with the order of restitution entered in King's criminal case. The Court declines to award restitution as to King, finding no need to duplicate that order. The Court **GRANTS** the request for restitution as to King Investments, however, holding King Investments jointly and severally liable for the restitution previously awarded as to King, in the amount of $4,499,146.51.

*C. Injunctive Relief*

In its second request for relief, the Commission asks the Court to permanently enjoin King, King Investments, and any other person or entity associated with them, or any successor thereof, from engaging in conduct that violates any of the provisions of the CEA and related Commission Regulations; from engaging in any activity relating to commodity trading, including

---

[2] The Commission claims that the CEA expressly provides for the award of ancillary equitable relief, including monetary restitution and disgorgement, in 7 U.S.C. § 13a-1. This section of the CEA does not reference any such relief. Subsections (a)–(c) contemplate relief such as injunctions, restraining orders, and writs of mandamus, all aimed at enforcing compliance with the CEA. 7 U.S.C. § 13a-1(a)–(c). Subsection (d) provides for civil penalties. 7 U.S.C. § 13a-1(d). The remainder of § 13a-1 provides certain procedures attendant to subsections (a)–(d). 7 U.S.C. § 13a-1(e)–(h). Although the ancillary equitable relief sought by the Commission is not expressly authorized by the CEA, it has been recognized as available by a number of courts.

but not limited to, soliciting, accepting, or receiving funds, revenue, or other property from any person; and from giving advice for compensation, or soliciting prospective clients, participants, or customers, related to the purchase and sale of any commodity futures or options on commodity futures contracts.

Section 6c of the CEA authorizes this Court to issue a temporary or permanent injunction upon a proper showing. 7 U.S.C. § 13a-1(a)–(b). Given Defendants' past violations of the CEA, the Commission need only show "that there is some reasonable likelihood of future violations" to be entitled to injunctive relief. *CFTC v. Hunt*, 591 F.2d 1211, 1220 (7th Cir. 1979). "A district court may properly infer a likelihood of future violations from the defendant's past unlawful conduct." *CFTC v. Am. Bd. of Trade, Inc.*, 803 F.2d 1242, 1251 (2d Cir. 1986). "While past misconduct does not lead necessarily to the conclusion that there is a likelihood of future misconduct, it is 'highly suggestive of the likelihood of future violations.'" *Hunt*, 591 F.2d at 1220 (quoting *Sec. & Exch. Comm'n v. Mgmt. Dynamics, Inc.*, 515 F.2d 801, 807 (2d Cir. 1975)). The inquiry ultimately rests upon the "totality of circumstances, and factors suggesting that the infraction might not have been an isolated occurrence." *Id.* "Such factors include the egregiousness of the defendant's actions, the isolated or recurrent nature of the infraction, the degree of scienter involved, the sincerity of the defendant's assurances against future violations, the defendant's recognition of the wrongful nature of his conduct, and the likelihood that the defendant's occupation will present opportunities for future violations." *Sec. & Exch. Comm'n v. Carriba Air, Inc.*, 681 F.2d 1318, 1322 (11th Cir. 1982).

Defendants do not contest the Commission's request for a permanent injunction. The evidence before the Court establishes that Defendants' violations of the CEA were egregious and

recurrent in nature: the fraudulent scheme was conducted for nearly a decade, involved more than sixty customers, and resulted in $4,499,146.51 in customer losses. There is also no doubt that Defendants acted intentionally, misappropriating customer funds for personal use and issuing fraudulent balance and earnings statements. All the evidence suggests a likelihood of future violations. The Court therefore **GRANTS** the Commission's Motion for Summary Judgment as to its request for a permanent injunction. The Court permanently **ENJOINS** King, King Investments, and any other person or entity associated with them, or any successor thereof, from engaging in conduct that violates any of the provisions of the CEA and related Commission Regulations; from engaging in any activity relating to commodity trading, including but not limited to, soliciting, accepting, or receiving funds, revenue, or other property from any person; and from giving advice for compensation, or soliciting prospective clients, participants, or customers, related to the purchase and sale of any commodity futures or options on commodity futures contracts.

*D. Civil Monetary Penalty*

"In any action brought under [section 6c of the CEA], the Commission may seek and the court shall have jurisdiction to impose, on a proper showing, on any person found in the action to have committed any violation a civil penalty in the amount of not more than the higher of $100,000 or triple the monetary gain to the person for each violation." 7 U.S.C. § 13a-1(d)(1). For violations of the CEA committed between October 23, 2000 and October 22, 2004, the amount has been adjusted for inflation to be "not more than the greater of $120,000 or triple the monetary gain to such person for each such violation." 17 C.F.R. § 143.8(a)(2)(ii) (2004). The Commission here seeks a civil monetary penalty in the amount of $4,499,146.51, based upon the

gravity of Defendants' violations of the CEA.  Defendants contest this amount, arguing that "[i]n fixing any civil monetary penalty, courts should be realistic and not set a figure which is impossible for a defendant to comply with due to lack of monetary resources."  *AVCO*, 28 F. Supp. 2d at 121; *see also Rosenberg*, 85 F. Supp. 2d at 455 (quoting *AVCO*, 28 F. Supp. 2d at 121); *CFTC v. Heffernan*, 274 F. Supp. 2d 1375, 1378 (S.D. Ga. 2003) (quoting *Rosenberg*, 85 F. Supp. 2d at 455).  Accordingly, Defendants argue that a civil penalty in the amount of $240,000.00 would satisfy the remedial goals of the CEA.

The Commission responds that the cases supporting Defendants' position—*AVCO*, *Rosenberg*, and *Heffernan*—were all incorrectly decided.  Specifically, the Commission contends that section 209 of the Futures Trading Practices Act of 1992, Pub. L. No. 102-546, § 209, 106 Stat. 3590, 3606–07 (1992) ("FTPA"), modified 7 U.S.C. § 9a to no longer require the consideration of, in the Commission's assessment of a civil penalty under 7 U.S.C. §§ 9, 15, the net worth of the defendant.  The FTPA did in fact modify 7 U.S.C. § 9a in that manner, but the Court is unpersuaded that the FTPA had any effect on the Court's ability to consider, as a factor in determining the penalty amount, Defendants' ability to pay.  As an initial matter, the Court notes that 7 U.S.C. § 9a(1)—the relevant portion of the CEA that the FTPA modified—concerns only what factors the Commission must consider when the Commission itself imposes a civil penalty pursuant to 7 U.S.C. §§ 9, 15.  7 U.S.C. § 9a(1) ("In determining the amount of the money penalty assessed under sections 9 and 15 of this title, the Commission shall consider the appropriateness of such penalty to the gravity of the violation.").  Importantly, 7 U.S.C. §§ 9, 15 allow the Commission to enforce portions of the CEA through its own adjudicative mechanism.  The Commission may also enforce portions of the CEA through actions brought in the district

courts, pursuant to 7 U.S.C. § 13a-1. *See* 7 U.S.C. § 13a-1 ("the Commission may bring an action in the proper district court of the United States . . . to enjoin such act or practice, or to enforce compliance with this chapter, or any rule, regulation or order thereunder, and said courts shall have jurisdiction to entertain such actions"). Though the Commission repeatedly stresses that 7 U.S.C. § 9a is directed to "the Commission and Courts," this is simply not the case. In fact, neither 7 U.S.C. § 9a nor 7 U.S.C. § 13a-1 provide any instruction to the district courts as to the appropriate considerations in assessing a civil penalty under 7 U.S.C. § 13a-1. Accordingly, the court's observation in *AVCO*, that courts "should be realistic" in imposing civil penalties, did not misunderstand the FTPA's effect on the factors it should consider under 7 U.S.C. § 13a-1. 28 F. Supp. 2d at 121. In fact, the court in *AVCO* did not mention the limitations of 7 U.S.C. § 9a(1) in assessing a civil penalty, likely because that provision was irrelevant to its assessment.[3] The Court thus determines that it may, in its discretion, consider Defendants' net worth in assessing a civil penalty under 7 U.S.C. § 13a-1(d)(1).[4] This holding is consistent with the

---

[3] The Commission's reliance on *JCC, Inc. v. CFTC* is unavailing. 63 F.3d 1557 (11th Cir. 1995). *JCC* involved an appeal from sanctions imposed directly by the Commission. *Id.* at 1570. Accordingly, the Eleventh Circuit was correct to note that the FTPA "obviated the *Commission's* duty to consider a respondent's net worth when assessing a monetary penalty." *Id.* at 1570, n.42 (emphasis added). The Court notes that the Commission, in quoting the same language from *JCC* several times throughout its briefing, omitted the most relevant word of the sentence: "Commission's."

[4] The legislative history of the FTPA confirms the Court's conclusion that the FTPA did not purport to restrict the district courts' consideration of net worth under 7 U.S.C. § 13a-1(d)(1). The House Report accompanying the FTPA noted that it would "eliminate the requirement that [the] CFTC consider a wrongdoer's financial circumstances in assessing a civil penalty." H.R. REP. NO. 102-6, at 55–56 (1991). The Report noted that the requirement that the Commission consider such evidence had resulted in "considerable litigation," which was a "burden on the Commission's enforcement program." *Id.* The Senate Report also noted that the FTPA required the "Commission . . . only to consider the appropriateness of such penalty to the gravity of the violation." S. REP. NO. 102-22, at 44 (1991), *reprinted in* 1992 U.S.C.C.A.N. 3103, 3146. "However, the Commission may, in its sole discretion, choose to consider such other factors *as the wrongdoer's ability to pay* in determining whether a penalty is appropriate in the public interest." *Id.* (emphasis added). The legislative history makes clear that the FTPA's modification of 7 U.S.C. § 9a did not affect this Court's assessment of a civil penalty under 7 U.S.C. § 13a-1(d)(1). Even if it did, the Senate Report suggests that the Commission—and therefore, accepting *arguendo* the Commission's reasoning, the Court—could still consider net worth, in the exercise of its discretion.

Middle District of Florida's rejection of a nearly identical argument made by the Commission when seeking civil penalties under 7 U.S.C. § 13a-1(d)(1), as here. *CFTC v. R.J. Fitzgerald & Co.*, No. 8:99-CV-1558-T-MSS, 2006 WL 1406542, at *1 (M.D. Fla. May 19, 2006).

The Commission does not contest King's affidavit testimony which establishes his insolvency. He has insufficient resources to satisfy the outstanding order of restitution awarded in his criminal case, $4,499,146.51, and thus he is highly unlikely to be able to satisfy any civil penalty assessed in this case. The same conclusion is reasonably inferable about King Investments, given King's control of the company. Defendants do not dispute that they received $4,499,146.51 in monetary gain as a result of their violations of the CEA. Accordingly, the Court has the authority to impose three times that amount—$13,497,439.53—against Defendants as a civil penalty. 7 U.S.C. § 13a-1(d)(1); 17 C.F.R. § 143.8(a)(2)(ii). Accounting for the gravity of the offense and the net worth of Defendants, the Court finds that a civil penalty of ten percent of the monetary gain of Defendants would effectuate the deterrent and remedial goals of the CEA. Accordingly, the Court **GRANTS** the Commission's Motion for a civil penalty, and finds Defendants jointly and severally liable for a civil penalty of $449,914.65, to be paid after fulfillment of the restitution ordered here and in King's criminal case. Should either party object to the Court's assessment of the penalty without an evidentiary hearing, he or it shall object in writing by **May 18, 2007**.

## CONCLUSION

The Commission's Motion for Summary Judgment is **GRANTED IN PART**. The Court finds that King violated section 4b(a)(2)(i)–(iii) of the CEA, and **GRANTS** the injunctive relief requested by the Commission. The Court finds King Investments to be jointly and severally

liable for the amount of the award of restitution entered against King in his criminal case, $4,499,146.51, but declines to enter a duplicate award of restitution as to King. Finally, the Court **GRANTS** the Commission's request for imposition of a civil penalty, and finds Defendants jointly and severally liable for a civil penalty of $449,914.65, to be paid after fulfillment of the restitution ordered here and in King's criminal case, subject to the potential objections noted above.

    **SO ORDERED**.

    May 7, 2007.

_____
**BARBARA M. G. LYNN**
**UNITED STATES DISTRICT JUDGE**
**NORTHERN DISTRICT OF TEXAS**